IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

| | | |
|---|---|---|
| CHARLES E. GREENE, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | 1:10CV824 |
| | ) | |
| DURHAM REGIONAL HOSPITAL, | ) | |
| DUKE UNIVERSITY HEALTH SYSTEM, | ) | |
| INC., JOSEPH BRIAN WILLIAMS, | ) | |
| | ) | |
| Defendants. | ) | |

MEMORANDUM OPINION AND RECOMMENDATION OF
UNITED STATES MAGISTRATE JUDGE

This employment discrimination action is before the Court on a Motion to Dismiss and to Confirm Arbitration Award [Doc. #10] filed by Defendants Duke University Health System, Inc. ("Duke"), Durham Regional Hospital ("Durham Regional"), and Joseph Brian Williams (collectively "Defendants"). Plaintiff Charles E. Greene is a former employee of Defendant Durham Regional Hospital and brings various claims related to the termination of his employment. For the reasons stated below, Defendants' Motion to Dismiss and to Confirm Arbitration Award should be granted, and this action should be dismissed.

I.   FACTS, CLAIMS, AND PROCEDURAL HISTORY

Plaintiff filed his Complaint in state court, and Defendants removed it to this Court pursuant to 28 U.S.C. §§ 1331 and 1343(a)(4), based upon federal question jurisdiction. (Pet. for Removal [Doc #1].) In his Complaint, Plaintiff alleges that he was the communications department director at Durham Regional Hospital at all relevant times. According to Plaintiff, Defendant Duke University Health System, Inc. owns and operates Defendant Durham

Regional Hospital. Plaintiff's First Claim for Relief is against all Defendants for retaliation. His Second Claim for Relief is against all Defendants for negligent infliction of emotional distress. Plaintiff's Third Claim for Relief is against Defendants Durham Regional and Duke for respondeat superior. Plaintiff Greene seeks damages as relief.

The EEOC issued a Dismissal and Notice of Rights to Plaintiff on June 25, 2010. Plaintiff filed his Complaint in state court on September 24, 2010. In his Complaint, Plaintiff alleges that his EEOC charge against Defendants was for sex discrimination. (Compl. [Doc. #2] ¶ 7.) He says that he is an African American who began working at Defendant Durham Regional in 1999 as an assistant manager in the laundry department. In April 2001, Plaintiff was transferred to the communications department to work as a telephone operator.

In May 2008, Plaintiff was advised by Defendant Williams, the director of the communications department, that his work schedule would be changing and that he would no longer have weekends off. Plaintiff contends that this change was made without giving him proper notice. He also claims that he was forced to change his work schedule because he was a male, and Defendant Williams did not wish to disrupt the work schedules of the female telephone operators. Plaintiff says that he had to use much of his allotted personal time off to keep the commitments he had made for periods of time when he was now scheduled to work. Plaintiff states that he complained for four months (from May 2008 until August 2008) through the chain of command at Defendant Durham Regional about his work schedule and the alleged discrimination of Defendant Williams.

Plaintiff alleges that on July 31, 2008, he received a performance report from Defendant Williams with ratings "not compatible" with his performance. (Compl. [Doc. #2] ¶ 17.) On October 9, 2008, Plaintiff states that while at work he answered a telephone call from someone who was "not a serious caller and was not a patient or someone seeking medical assistance." (Id. ¶ 18.) Plaintiff says that he "engaged the caller in a joking manner." (Id.) Plaintiff alleges that prior to that night, Defendant Williams had instructed another telephone operator to listen in on Plaintiff's conversations and to inform Defendant Williams of any occurrences which could lead to Plaintiff's termination. Shortly after Plaintiff's conversation with the caller, the other operator alerted Defendant Williams "to the fact that Plaintiff engaged in a questionable conversation and gave Defendant Williams the time to listen to Plaintiff's recorded incoming calls." (Id. ¶ 20.)

On October 20, 2008, Plaintiff reported to the human resources department as instructed and found Defendant Williams and a human resources representative waiting for him. A tape of Plaintiff's October 9, 2008, phone call was played, and Plaintiff was asked to sign termination paperwork. Plaintiff states that the reasons given for his discharge were flagrant misconduct and incivility (failure to appropriately interact with others).

Defendants move to dismiss based upon the arbitration proceedings already completed by the parties. (Def.'s Mem. [Doc. #11].) They contend that Plaintiff initiated arbitration proceedings under Duke's Dispute Resolution Policy, which covers any claim arising out of or relating to employment practices. Plaintiff does not deny that he was subject to the Policy, that

his claims fell within the scope of the Policy,[1] or that he arbitrated his differences with Defendants, but contends that the arbitration process "was executed in a manner that caused great harm to [his] case and did not allow for a fair hearing." (Pl.'s Resp. [Doc. #19] at 1.)

Defendants have submitted a copy of the arbitration award entered on May 26, 2009.[2] According to the Award [Doc. #11-4 at 4], the arbitration hearing was held at Durham Regional Hospital on April 14, 2009. Duke University is listed as the Respondent in the Award, and Plaintiff is the Claimant. Several witnesses testified on behalf of both parties and several documents and sound recordings were introduced into evidence, according to the Award. The arbitrator found that when Plaintiff answered the phone call on October 9, 2008, that he "pretended to be someone else," "talked to the caller about a job," "raised the pitch of his voice to sound more like a woman and, among other things, told the caller that he could work there if he was as young as five-years-old." (Id.) The recording of the call made its way to Plaintiff's supervisors who initiated disciplinary action. A dispute resolution panel comprised of Plaintiff's fellow employees recommended that the initial decision to terminate him be upheld. Plaintiff then submitted his arbitration claim.

---

[1] The copy of the Policy submitted by Duke and not challenged by Plaintiff shows that Plaintiff could arbitrate his claims of "sexual harassment or discrimination." (Policy [Doc. #11-2 at 5] Step III: Arbitration.) The Policy covers "[a]ny claim arising out of or relating to employment policies." (Id. at 2.) The Policy also states that "[t]he arbitrator's decision . . . will be final and binding between the parties as to all claims which were or could have been raised in connection with the dispute." (Id. at 6-7.)

[2] Although Plaintiff does not mention the Policy or award in his Complaint, they are properly considered on this motion to dismiss under Federal Rule of Evidence 201(b), which allows the Court to take judicial notice of adjudicative facts which are not subject to reasonable dispute. See CBP Res. Inc. v. SGS Control Servs. Inc, 394 F. Supp. 2d 733, 737 & n.3 (M.D.N.C. 2005); Investor Relations Servs., Inc. v. Michele Audio Corp. of Am., Inc., No. 1:04CV565, 2006 WL 2571028 (M.D.N.C. July 19, 2006). Here, Plaintiff does not dispute the accuracy of the copy of the Policy or award submitted by Defendants.

4

The arbitrator found that Plaintiff had not established that his termination violated any laws, including those prohibiting discrimination, nor had he established that his termination violated any contract with his employer or rules or policies of the employer. The arbitrator stated that Plaintiff based his claim instead upon what he perceived to be the employer's overreaction. The arbitrator also did not find evidence "that anyone at the hospital was intent of having [Plaintiff] terminated before this incident." (Id. at 5.) Plaintiff's request that his termination be rescinded was denied.

In his Response to Defendants' Motion to Dismiss and to Confirm the Award, Plaintiff argues that the Award should not be confirmed because the arbitrator refused to consider his evidence, Defendants did not provide him with any documents or a witness list before the hearing, the audio CD played during the hearing was played at a very low volume, and although the arbitrator's decision states that the hospital presented evidence, Plaintiff states that it did not present any witnesses. (Pl.'s Response [Doc. #19] at 2-3.) Plaintiff also argues that he did not receive any document advising him that he could appeal the arbitrator's decision. He says that he called the American Arbitration Association offices and "was told that unless the arbitrator broke a law during the proceedings that the decision was final and could not be appealed." (Id. at 4.)

II. DISCUSSION

    A.    Standard

A plaintiff fails to state a claim on which relief may be granted under Federal Rule of Civil Procedure 12(b)(6) when the complaint does not "contain sufficient factual matter,

accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Iqbal, 556 U.S. at 678.

B.   Confirmation of Award

The Federal Arbitration Act ("FAA") sets out the procedures for courts to follow to resolve motions to confirm, vacate, or modify arbitration awards. Pursuant to 9 U.S.C. § 9, "at any time within one year after [an arbitration] award is made any party to the arbitration may apply to the court so specified for an order confirming the award." 9 U.S.C. § 9. Section 9 also provides that a court "must" confirm the arbitration award "unless" it is vacated, modified, or corrected as prescribed in sections 10 and 11. Section 12 of the Act states that "[n]otice of a motion to vacate, modify, or correct an award must be served upon the adverse party or his attorney within three months after the award is filed or delivered." Section 10 of the Act sets out the bases upon which the court may vacate the award, specifically, that the award was procured by corruption, fraud, or undue means; where there was evident partiality or corruption in the arbitrator; where the arbitrator was guilty of misconduct such as in refusing to hear pertinent evidence; or where the arbitrator exceeded his powers.

Although Section 9 and Section 12 of the Act set out certain time periods, courts have construed only the three-month period of Section 12 as mandatory. This is because the statute states that notice of a motion to vacate or set aside the award "must" be served within three

6

months after the award. In contrast, Section 9 provides that during the one year after an arbitration award is made, a party "may apply" to the court for an order confirming the award. The Fourth Circuit has held that the one-year period specified in Section 9 does not prevent a party from moving to confirm the arbitration award after that time period has run. Sverdrup Corp. v. WHC Constructors, Inc., 989 F.2d 148, 156 (4th Cir. 1993) (Section 9 "must be interpreted as its plain language indicates, as a permissive provision which does not bar the confirmation of an award beyond a one-year period.") Therefore, Defendants' Motion to Confirm filed after this one-year period is not proscribed by Section 9.[3] Defendants contend, however, that because Plaintiff did not serve a motion to vacate the arbitration award within three months of its filing, the court must dismiss Plaintiff's claims.

The Fourth Circuit has held that "once the three-month period has expired, an attempt to vacate an arbitration award could not be made even in opposition to a later motion to confirm." Taylor v. Nelson, 788 F.2d 220, 225 (4th Cir. 1986); see also Choice Hotels Int'l, Inc. v. Shiv Hospitality, L.L.C., 491 F.3d 171, 177 (4th Cir. 2007). In Choice Hotels, the court noted that in Taylor, the court assumed "for the sake of argument" that due diligence or tolling were exceptions to the three-month bar. 491 F.3d at 177. However, if the person remains free to challenge the award within the three-month time period, he is not entitled to these exceptions, even if they exist. Id. at 177-78; see also Taylor, 788 F.2d at 226 ("Taylor remained free at all times to pursue the statutory remedy of § 12 within the time limits set out by that statute, and

---

[3] The arbitration award was delivered to the parties on May 27, 2009. (Award [Doc. #11-4].) Defendants' Motion to Dismiss and to Confirm was filed on January 11, 2011. (Motion [Doc. #10].)

he is not entitled to the benefit of any due diligence or tolling exceptions to the three-month rule, even if such exceptions exist.").

Plaintiff does not allege that he moved to vacate the arbitration award at any time. His reason for not moving to vacate the arbitration award during the three-month period seems to be that he simply did not know that he could do so. (Pl.'s Response [Doc. #19] at 4.) However, he does state that he called the offices of the AAA upon receiving the decision and was told that "unless the arbitrator broke a law during the proceedings that the decision was final and could not be appealed." (Id.) This suggests that he knew at that point that an appeal of some type was possible. Moreover, there is no allegation that the Defendants misled Plaintiff in any way. Therefore, Plaintiff has not alleged any facts to show that he was not free to move to vacate the award during the three-month period, and even if tolling of the period is an available exception, it is not applicable. Cf. Choice Hotels, 491 F.3d at 177; Taylor, 788 F.2d at 226.

The record therefore shows that the arbitration award at issue has not been "vacated, modified, or corrected" under the FAA. 9 U.S.C. § 9. Section 9 of the Act instructs that under such circumstances, the court "must grant" the motion for an order confirming the award. (Id.) Accordingly, Defendants' Motion to Confirm the Award should be granted.

C. Dismissal of Claims

Defendants also move for the dismissal of all of Plaintiff's claims. As pointed out above, the Policy calls for the arbitrator's decision to be "final and binding between the parties as to all claims which were or could have been raised in connection with the dispute." (Policy [Doc. #11-2] at 7.) Plaintiff's First Claim for Relief is for employer retaliation based upon his

8

complaints about the change in his work schedule, in violation of 42 U.S.C. § 1981. (Compl. [Doc. #2] at 6.) His Second Claim for Relief is for negligent infliction of emotional distress under North Carolina law by either failing to take action based upon his complaints as to his work schedule or by dismissing him. (Id. at 6-8.) His Third Claim for Relief is for respondeat superior, which raises no independent claim for relief.

All of Plaintiff's claims therefore fall under the scope of the Policy as a "claim arising out of or relating to employment policies" and are claims "based in whole or in part on federal, state or local laws whether statutory or common law." (Policy [Doc. #11-2] at 2-3.) He could have raised them in his arbitration hearing, and by the terms of the arbitration Policy the arbitrator's decision denying relief to Plaintiff and finding that Plaintiff's termination did not violate any law is final and binding on these claims. See Soloman v. Duke Univ., 850 F. Supp. 372, 373 (M.D.N.C. 1993) (finding that arbitrator's decision that plaintiff was terminated for cause "prevents Plaintiff from alleging that her employment was terminated in violation of statutory or common law.")[4]

---

[4] Although not a party to the arbitration agreement, Defendant Williams may enforce the agreement against Plaintiff because Plaintiff alleges that at all times Defendant Williams acted as the employee and agent of Defendant Durham Regional and Defendant Duke. See Brown v. Centex Homes, 615 S.E.2d 86, 89 (N.C. Ct. App. 2005) (arbitration clause in contract between plaintiffs and Centex extends to agent of Centex).

III. CONCLUSION

IT IS THEREFORE RECOMMENDED that Defendants' Motion to Dismiss and to Confirm Arbitration Award [Doc. #10] be granted, and that this action be dismissed.

This, the 24th day of November, 2014.

                                                  /s/ Joi Elizabeth Peake  
                                                United States Magistrate Judge